**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | |
|---|---|
| DEANNA EFFLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| BALTIMORE POLICE DEPARTMENT ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |

**COMPLAINT**

Plaintiff Deanna Effland ("Plaintiff" or "Ms. Effland"), by and through her attorney, Tonya Baña, hereby brings this Complaint against Defendant Baltimore Police Department ("Defendant," the "Department" or the "BPD") alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and in support thereof states as follows:

**PARTIES**

1. Plaintiff Deanna Effland is an adult resident of the State of Maryland who resides at 2276 Howland Drive, Forest Hill, Maryland 21050. Ms. Effland has been a sworn police officer with the BPD for over two decades.

2. Defendant Baltimore Police Department is an agency of the State of Maryland and a municipal police force with jurisdiction covering the City of Baltimore. The Department's police power is conferred by the Mayor and City Council of Baltimore pursuant to the Baltimore City Charter. At all relevant times, the Department was Ms. Effland's employer within the meaning of Title VII.

## JURISDICTION AND VENUE

3. This court has jurisdiction over Ms. Effland's claims pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331 because this action is brought pursuant to Title VII. Venue is proper because BPD is located in this District and most of the acts giving rise to Ms. Effland's claims occurred in this District.

## CONDITIONS PRECEDENT TO SUIT

4. Ms. Effland has satisfied all administrative and procedural prerequisites and conditions precedent to bringing claims under Title VII by timely filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on the grounds raised in this action and obtaining a Notice of Right to Sue.

## FACTS COMMON TO ALL COUNTS

5. Ms. Effland was initially hired as a Police Officer Trainee on August 29, 1994 and became a sworn Police Officer in or around February 1995. She currently holds the rank of Lieutenant and is assigned to the Management Services Division.

6. Ms. Effland is a dedicated police officer who received regular promotions and had a track record of meaningful contributions to the crime effort before the events giving rise to this lawsuit.

7. After beginning her career as a uniformed patrol officer, she held various assignments within the purview of the Patrol Bureau and worked in a variety of specialized units in some of the city's most violent areas.

8. Upon her promotion to the rank of Sergeant in May 2000, she was assigned to the Drug Enforcement Unit and the Organized Crime Division and gained a

wealth of knowledge, advanced training and experience with respect to narcotics and criminal organizations.

9. After she was promoted to the rank of Lieutenant in January 2007, she served as Shift Commander and worked on a Crime Suppression Unit in the Southeastern District.

10. In Spring 2011, Ms. Effland was assigned to the Northeastern District where she initially worked under the direct supervision of the District's Commander, then Major Darryl De Sousa ("Mr. De Sousa"), who made her Administrative Lieutenant.

11. Shortly thereafter, Deputy Major Lester Rutherford ("Mr. Rutherford") was transferred to the Northeastern District from the Western District and became Ms. Effland's immediate supervisor.

12. From the beginning, Mr. Rutherford had a pattern of treating Ms. Effland and other female police officers more harshly than their male colleagues and engaging in offensive conduct that created an intimidating, hostile and abusive environment.

13. For example, Mr. Rutherford implemented a new work schedule and canceled approved leave, which violated the terms of BPD's collective bargaining agreement with the Fraternal Order of Police. Ms. Effland was the only officer who was required to be back at work at 9 AM the morning after she worked a 7 PM to 3 AM shift and, as a result, had no choice but to sleep in her office. When Ms. Effland tried to discuss the situation with Mr. Rutherford and requested to take leave, Mr. Rutherford said, "fuck the contract," told her if she or anyone else filed a grievance he would "find a way to fuck them," and denied her request.

14. In or around May 2011, Ms. Effland was responsible for authorizing overtime slips in connection with a prolonged barricade situation involving another police officer whose girlfriend falsely accused him of holding her hostage. When Ms. Effland asked what happened, Mr. Rutherford responded, "I'll tell you what happened. He didn't hold her head down and treat her like the bitch she is," and simulated holding someone down by the head in the course while performing a sex act.

15. In August 2011, Ms. Effland requested and received approval from the District Commander, Mr. De Sousa, to use vacation and compensatory time in connection with an elective surgery. When Mr. Rutherford learned that Mr. De Sousa had approved Ms. Effland's time off, he ordered her not to contact Mr. De Sousa and required her to take medical leave instead. During Ms. Effland's medical leave, Mr. Rutherford showed up at her home unannounced and in plain clothes and informed her that he was suspending her police powers and placing her on suspension for failing to communicate with him while she was on leave. Departmental policy provides that when medical checks are conducted on members of the opposite sex, a member of the same sex must be present. It is also departmental policy not to suspend officers who are on medical leave until they are out of work for at least ninety (90) days, and Ms. Effland is aware of male officers in the Northeastern District who were allowed to remain on medical leave for up to a year without being suspended.

16. On November 16, 2011, Ms. Effland filed an internal complaint with BPD's EEO Division, which immediately triggered the issuance of a "no contact" order requiring Mr. Rutherford to stay away from Ms. Effland. However, Mr. Rutherford violated the "no contact" order almost immediately by coming into Ms. Effland's office

4

and meeting with her one-on-one. He also texted her and called her cell phone when she was off duty.

17. As a result of Mr. Rutherford's persistent non-compliance with the "no contact" order, in January 2012, Ms. Effland was reassigned to the Communications Section, which is responsible for dispatching officers to calls for service and widely regarded as an undesirable assignment where "careers go to die."

18. After hearing nothing further from BPD's EEO Division regarding her internal complaint, on May 10, 2012, Ms. Effland initiated the processing of filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") by submitting an Intake Questionnaire to an EEOC intake officer, which also included a copy of her internal complaint. She executed a formal Charge of Discrimination on July 23, 2012.

19. On December 17, 2012, BPD submitted a position statement to the EEOC admitting that the investigator who handled Ms. Effland's internal complaint found that Mr. Rutherford violated BPD's internal rules and regulations and discriminated against Ms. Effland on the basis of her sex in violation of Title VII.

20. In addition, on July 29, 2015, the EEOC issued a determination finding that there was reasonable cause to believe that Ms. Effland was discriminated against in violation of Title VII. In making this determination, the EEOC expressly noted that BPD's Internal Affairs Division sustained charges of misconduct, disparate treatment, discrimination, neglect, false statement, hostile work environment, and retaliation against Mr. Rutherford.

21.  Since filing her internal complaint with BPD's EEO Divison and filing her charge with the EEOC, Ms. Effland has continued to experience retaliation in the form of decreased career opportunities as a result of her assignment to the Communications Section as well as a demotion after she was placed under the supervison of

22.  After the EEOC's efforts to conciliate with BPD failed, on August 18, 2017, the U.S. Department of Justice issued Ms. Effland a Notice of Right to Sue, which was delivered to her via certified mail on September 1, 2017.

## COUNT I

**(Disparate Treatment, Hostile Work Environment, and Retaliation in Violation of Title VII)**

23.  Ms. Effland repeats and incorporates by reference the allegations of paragraphs 1 through 23 of the Complaint as if they were set forth in full herein.

24.  BPD violated Ms. Effland's right to equal employment opportunity by allowing her to be treated differently from her male colleagues in the terms and conditions of her employment because of her sex, to be subjected to a hostile work environment because of her sex, and to be retaliated against for opposing unlawful sex discrimination and for filing a charge of discrimination in violation of Title VII.

25.  WHEREFORE, Ms. Effland respectfully requests that this Court enter judgment in her favor and against BPD and further requests the following relief:

a) Back pay, front pay, and benefits;

b) Compensatory damages;

c) Prejudgment interest;

d) An award or reasonable counsel fees and costs; and

e) Such other legal and equitable relief as may be just and proper under the circumstances.

Date: November 30, 2017

Respectfully Submitted,

/s/ Tonya Baña

TONYA BAÑA
Tonya Bana LLC
129 Slade Avenue
Pikesville, MD  21208
Tel.: (443) 890-8000
Fax: (410) 670-7573
E-mail:  tonya@tonyabana.com

Attorney for Plaintiff